# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| LEROY SIMPSON-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-00501-DGK |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING VARIOUS MOTIONS AND DISMISSING THIS CASE UNDER FEDERAL RULE OF CIVIL PROCEDURE 41(B) FOR FAILURE TO COMPLY WITH THE COURT'S ORDERS

This case arises from Defendant Bank of America allegedly putting an erroneous fraud-alert restriction on Plaintiff Leroy Simpson-Brown's bank account. According to Plaintiff, the fraud alert was entered into an inter-bank system that prevented Plaintiff from being able to open bank accounts at other institutions. After some informal dispute resolution attempts with Defendant, Plaintiff filed a pro se lawsuit in the Circuit Court of Jackson County, Missouri, alleging claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and Missouri state law. On June 30, 2025, Defendant removed the case here based on federal question and diversity jurisdiction. ECF No. 1.

Now before the Court[1] are: (1) the Court's show cause order—and the parties' responses—for whether this case should be dismissed under Federal Rule of Civil Procedure 41(b), ECF Nos. 84, 85, 91, 95, 96, 100, 102, 103, 104; (2) Plaintiff's forty-four motions seeking various forms of relief, ECF No. 4–8, 10, 18–19, 20–21, 24, 26–27, 32–33, 35–37, 39, 41–42, 44, 46, 51–52, 55–56, 59, 63–66, 68, 72–73, 78, 83, 85, 90, 98, 100, 102–104; and (3) Defendant's motion to dismiss

---

[1] Although it is clear from the context in this order and all previous orders, the "Court" refers to the undersigned judge.

for failure to state a claim, ECF No. 48.[2]

For the reasons discussed below, all motions are DENIED, and this case is DISMISSED WITH PREJUDICE under Federal Rule of Civil Procedure 41(b) for failure to comply with the Court's orders.

Moreover, as discussed more thoroughly below, given Plaintiff's misconduct throughout this case and the security and well-being concerns raised by it, the Court is continuing its prior access and communication restrictions until further order of the Court. Thus, it is ORDERED that:

1. Plaintiff shall not enter the Charles Evans Whittaker United States Courthouse located at 400 East Ninth Street, Kansas City, Missouri 64106, unless he has a court hearing in one of his cases;
2. If Plaintiff enters the courthouse for a hearing in one of his cases, he must immediately report to a Court Security Officer in the lobby and request an escort to and from the courtroom and shall not enter the Clerk's Office under any circumstance;
3. Plaintiff is prohibited from calling or emailing the Court's staff, the Clerk of the Court, or the Clerk of the Court's staff—including any member of the Clerk's Office—about this case; and
4. All communications with the Court about this case must be made in writing and filed via the mail or through the Electronic Document Submission System ("EDSS").[3] No filings shall be made via email.

Failure to follow this order may result in the imposition of criminal penalties for criminal contempt of court under 18 U.S.C. § 401 and/or the Court's inherent authority.

## **Background**

On or about April 23, 2025, Plaintiff filed this case and sought leave to proceed in forma pauperis ("IFP") in the Circuit Court of Jackson County, Missouri. *See Simpson-Brown v. Bank*

---

[2] Plaintiff's filings have been voluminous in terms of the number and length. Plaintiff also often intermingles various requests and arguments across many different filings. When the Court cites certain documents in support of its statements in this order, it is not meant to be an exclusive list or an indication that the Court did not consider any other filings when deciding a particular issue below. To the contrary, the Court laboriously sifted through all of Plaintiff's filings multiple times. So even if the Court does not cite a particular document, it does not mean the Court did not consider it when ruling on a certain issue.

[3] The EDSS "is a service that may be used by self-represented parties who need to file documents with the court as an alternative to mailing or bringing the documents to the courthouse." *See* ECF No. 61-1 (a copy of the EDSS submission page as it appeared at all relevant times).

*of Am.*, 2516-CV13029 (Mo. Cir. Ct. April 23, 2025) (hereinafter the "State Court Case"). Plaintiff's complaint alleges claims against Defendant under FCRA and Missouri state law, and it seeks a total of $810,000. Plaintiff is a citizen of Missouri, while Defendant is a citizen of North Carolina. The state court granted Plaintiff's IFP request on April 29, 2025, and it issued a summons on May 23, 2025.

On May 30, 2025, Defendant's counsel accepted informal service of the state court complaint via email. On June 30, 2025, Defendant removed the case to this Court. On that day, due to a clerical error, the case was initially assigned a different case number. *See Simpson-Brown v. Bank of Am.*, 4:25-cv-00497-DGK (W.D. Mo. June 30, 2025).[4] Shortly thereafter, the case under this case number was opened with a notice of removal. *See* ECF No. 1. The case caption of the notice of removal filed here bore the old case number (25-cv-00497), *see id.* at 1, but the ECF system file-stamped the notice of removal with the correct case number (25-cv-00501) at the bottom of each page, *see id.* at 1–5. Plaintiff was served with this notice of removal.

Simultaneous with filing the notice of removal here, Defendant also filed a notice in the State Court Case. *See* 2516-CV13029 (Mo. Cir. Ct. June 30, 2025). The initial filing that announced the removal properly listed this cases number (25-cv-00501), but its attached exhibit contained the notice of removal filed here. That means that the case caption had the incorrect case number (25-cv-00497), but each page had the correct number at the bottom (25-cv-00501).

Like in this case, Plaintiff had filed a barrage of motions and filings in the State Court Case before and after removal. So, on July 11, 2025, the state court entered an order denying as moot

---

[4] Based on the testimony from a Clerk's Office employee during a show cause hearing in this case, the cause of having two case numbers for removed cases is caused by a glitch that occasionally occurs in the ECF system. *See* ECF No. 88 at 30–31. At times, when the removing party is trying to open a new case, a technical error may arise during the process of filing in the ECF system. *Id.* This requires the removing party to then abandon the original filing process and start a new process that assigns a new case number. *Id.* In this case, the docket sheet for the original case (25-cv-00497) notes that it was opened in error.

3

all of Plaintiff's motions because it found that the state court had lost jurisdiction on June 30, 2025, when Defendant removed the case. *See* ECF No. 45-2 at 2 (copy of the State Court Case order).

In this Court, on July 1, 2025, Plaintiff filed six motions and two notices of filing that collectively sought default judgment, striking of certain filings, remand, and expedited review of all these motions. ECF Nos. 4–8, 10. Although several of his motions filed that day contained the case caption with the old case number (25-cv-00497), ECF Nos. 4–8, his final motion filed that day contained the correct case number (25-cv-00501) and sought remand to state court because the notice of removal contained the wrong number on the case caption, ECF No. 10.

The next day, the Court entered its Initial Standing Order (the "ISO"). ECF No. 13. At the start of the ISO, the Court made clear that the parties must comply with the ISO, the Federal Rules of Civil Procedure, and the Western District of Missouri's Local Rules (the "Local Rules"). *Id.* at 1. In the introduction, the ISO further stated that failure to comply with it "may result in the Court imposing sanctions, including but not limited to monetary payments, dismissal of claims or cases, entry of default judgment, or other appropriate sanctions." *Id.* On the second page, the ISO prohibited all ex parte communications unless they were allowed by the rules or law or were an "emergency" ("e.g., last-minute notification that a party will miss a hearing/trial, etc."). *Id.* at 2. The ISO further made clear that there should be no calls to chambers "absent an urgent situation (e.g., an attorney is ill and will miss a hearing, etc.)." *Id.* The ISO further stated that "[s]cheduling hearings should be done via email with the courtroom deputy." *Id.* The ISO also limited the emails the parties should send to "discovery dispute issues (discussed below), scheduling hearings, scheduling courtroom access for trial preparation purposes, proposed orders, proposed jury instructions, and last-minute communications." *Id.* The Court specifically directed all filing questions to be directed to the Clerk's Office. *Id.* Finally, the Court closed this section of the

ISO by ordering that "all other written communications should be made as a filing or motion submitted via ECF or the Clerk's Office. This ensures all substantive communications are made and preserved for the record." *Id.* at 3. As reflected in the docket entry associated with the ISO, the ISO was served on Plaintiff via the mail.

On July 3, 2025, after the Court had reviewed—but not yet ruled—on Plaintiff's barrage of initial motions, Defendant sought a short extension of time to respond to Plaintiff's complaint. ECF No. 15. Because Defendant's answer deadline was the Monday after the July Fourth holiday weekend and because the Court almost always grants short extension requests like this as a matter of courtesy, the Court granted the extension without waiting for Plaintiff's response. ECF No. 16.

Between July 3 and July 7, 2025, Plaintiff filed another five motions and four notices of filing. In those filings, he challenged the Court's granting of Defendant's extension request, raised further concerns about the removal process, and started accusing the Court of judicial bias. ECF Nos. 18–25. In one of those motions, Plaintiff also acknowledged actual notice of the ISO by arguing that the Court was undermining it by ruling on Defendant's extension request without addressing Plaintiff's motions. *See* ECF No. 21 at 2.

On July 9, 2025, Plaintiff filed two more motions that alleged Defendant's misconduct in removal and sought expedited review of motions. ECF Nos. 26–27. In one of these motions, Plaintiff sought to "enforce" the ISO against Defendant. ECF No. 26. In doing so, Plaintiff wrote, among other things: "The Initial Standing Order issued by this Court (Doc. 13) outlines mandatory expectations for all parties, including compliance with ECF filing, timely motion responses, citation to binding authority, and avoidance of vague or reference-based pleadings." *Id.* at 1. He also noted that the ISO "mandates that 'all other written communications should be made as a filing or motion submitted via ECF or the Clerk's Office.'" *Id.* at 2.

5

On the same day as those filings, the Court received multiple reports from courthouse staff that Plaintiff had been verbally abusive to staff and caused a lengthy disruption in the Clerk's Office and the courthouse lobby. The Court received further reports that the presence of many law enforcement officers was necessary to deescalate the situation, and that Plaintiff had engaged in similar behavior in the past.

Since the undersigned—in his many years on the bench—had never received a report that raised such serious security and well-being concerns for courthouse staff, law enforcement, and the public, the undersigned immediately entered a show cause order (the "Restriction on Access Show Cause Order"). ECF No. 28. The Restriction on Access Show Cause Order identified the alleged conduct, ordered Plaintiff to appear for a show cause hearing to determine whether his courthouse access should be restricted, and temporarily barred Plaintiff from entering the courthouse unless he was attending a court hearing or submitting filings through a drop box outside the Clerk's Office. *Id.* at 1–2. The Restriction on Access Show Cause Order further made clear that Plaintiff was prohibited from entering the Clerk's Office. *Id.* at 2. As can be seen by the docket entry for this order, the Court served the order on Plaintiff via certified mail. The order also directed the United States Marshals Service to serve a copy on Plaintiff.

The next morning, Plaintiff called the Court's chambers. He was demanding, aggressive, and refused to answer basic questions during the short call. As best the Court's staff could tell, Plaintiff was seeking to move the show cause hearing because it conflicted with a scheduled hearing date in one of his state court cases. When Plaintiff became combative and argumentative, the Court's staff ended the call. Plaintiff called chambers several more times, but the Court's staff did not answer the call because of his conduct and because the call violated the ISO. This interaction as well as Plaintiff's subsequent filings demonstrated that he received actual notice of

the Restriction on Access Show Cause Order because he was trying to reschedule the hearing date.

The Court then entered an order about the call ("ISO Violation Order"). ECF No. 30. The Court described Plaintiff's behavior during the call, noted how it was consistent with his reported behavior in the Clerk's Office, and explained how his call violated the ISO prohibitions on ex parte communications and phone calls. *Id.* at 1. The Court directed Plaintiff to file any request for an extension of time through a motion filed via: "(1) the mail; (2) the drop box outside the clerk's office; or (3) the Court's Electronic Document Submission System ('EDSS')." *Id.* The Court also told Plaintiff that "[f]ilings cannot be made via email" and that "[a]ll electronic filings must be made through the EDSS." *Id.* n.1.[5] As can be seen by the docket entry for the ISO Violation Order, the Court also served the order on Plaintiff via certified mail. The same day the ISO Violation Order was entered, the Court's staff also emailed Plaintiff a copy. *See* ECF No. 58 at 39.

A few hours later, Plaintiff sent several emails and filings to the Court's staff accusing them of mislabeling his filings[6] in ECF, refusing to provide their name during the call, manipulating docket entries, and entering orders without the Court's consent, among many other grievances. *See* ECF No. 58 at 38–66. Several of the emails threatened legal action against the Court's staff. *See id.* at 39–40. And some of them were sent directly in response to the Court's staff's courtesy copy email of the ISO Violation Order. *See id.*

Between when the Court entered the ISO Violation Order and midday the next day,

---

[5] Plaintiff did not use the ECF system in this case, which is the only other electronic filing system. Thus, EDSS was his only option for electronic filing.

[6] Throughout many of his motions, Plaintiff repeatedly complains that his filings have been mislabeled on the ECF docket. The titling of filings on the ECF docket does not impact how the Court considers or rules on any given motion. The ECF titling is simply a reference tool. In reviewing the motions, the Court always reviews the substance of the motion and any attachments to it to determine what relief the litigant is seeking. So there is no legal basis to complain about how certain filings have been titled on the ECF docket.

7

Plaintiff filed six more motions and two notices of filing.  ECF Nos. 31–39.  Many of these filings were also sent to the Court's staff and the Clerk of the Court via email, ECF No. 58 at 38–90, despite the Court explicitly stating in the ISO Violation Order that filings cannot be made via email, ECF No. 30 at 1 n.1.

Among the barrage of motions was Plaintiff's request to move the show cause hearing. ECF No. 32.  The Court promptly granted that motion and entered an order ("Additional Restrictions Order") moving the show cause hearing date to accommodate a hearing in one of Plaintiff's other pro se cases at the state level.  ECF No. 40.  In the Additional Restrictions Order, the Court noted that since the ISO Violation Order had been entered the previous day, Plaintiff had attempted to make several filings via email and sent the Court's staff and other courthouse staff emails raising baseless claims of misconduct and threatening legal action against court staff.  *Id.* at 1–2.  The Court found that "[t]his behavior not only violates the explicit terms of the Court's orders but also undermines their purpose."  *Id.* at 2.  The Court noted that the restrictions put in place in the Restriction on Access Show Cause Order were meant "to prevent disruption, intimidation, and discourteous behavior, which had the effect of harassing court personnel."  *Id.* The Court concluded that Plaintiff's email barrage was an attempt to "circumvent those restrictions by shifting his disruptive conduct to electronic communication," and the conduct bordered "on harassment" and was intended "to burden the Court."  *Id.*

The Court then instituted additional temporary restrictions and restated the prior ones along with them for clarity.  The Additional Restrictions Order stated:

1. Plaintiff is prohibited from entering the courthouse except for scheduled court appearances or when submitting documents through the drop box outside the clerk's office;
2. Plaintiff is prohibited from calling and/or emailing chambers staff, court staff, or any member of the clerk's office; and
3. All communications with the Court must be made in writing and filed in strict

8

compliance with the procedures described in the Court's last order (ECF No. 30).

*Id.* The Court made clear that "[t]hese restrictions shall stay in place until [the] Court orders otherwise." *Id.* The Court entered the Additional Restrictions Order at 2:27 PM on July 11, 2025, *id.* (entry receipt), and it emailed Plaintiff a courtesy copy that same day at 3:11 PM, ECF No. 58 at 92. As can be seen by the docket entry associated with the Additional Restrictions Order, the Court also served the order on Plaintiff via certified mail.

At 3:32 PM that day, in response to the Court's courtesy email copy of the Additional Restrictions Order, Plaintiff emailed the Court's staff and the Clerk of Court with a filing attached. In the email, Plaintiff stated:

> To the Filing Clerks and Chambers Personnel:
>
> Here we are again.
>
> Let me be crystal clear: this is now an ongoing pattern of retaliatory conduct by the Court and its staff—under the cloak of vague procedural orders and improperly entered docket restrictions. You are not only bending the law—you are trying to weaponize it. This is the latest attempt to silence a pro se litigant for doing what he's legally entitled to do: file motions, assert rights, and object to clear and repeated procedural misconduct.
>
> You act surprised every time I push back, but when are you going to learn? The record now shows unmistakable bias and selective enforcement. Orders like Document 40 not only mischaracterize my conduct—they completely ignore the misconduct of court staff who failed to docket multiple filings, created unnecessary restrictions, and issued anonymous directives never signed by the Judge himself. The moment I expose a procedural error—suddenly the Court becomes hostile. Suddenly my filings are "threats," and my motions "burden the court." Let's be real: this is institutional retaliation in its most blatant form.
>
> Now you want to restrict courthouse access, email communication, and even the ability to follow up on my filings. Over what? A filing error you won't even own? A procedural mislabeling that exposed your chambers' mishandling of my motions?
>
> What's happening here is not just unethical—it borders on criminal. I am preparing to submit yet another formal report and grievance, not just to the

9

appropriate judicial review authorities, but also to federal agencies with oversight powers. If necessary, I will also seek referral for criminal obstruction of justice and civil rights violations under 18 U.S.C. § 242 and 42 U.S.C. § 1983.

I am attaching my formal Objection to Docket Entry 40. I expect it to be entered timely and in full. I am also preserving the entire sequence for appellate review. Let this serve as your notice: I will not stand down, and I will not be gaslit out of my right to pursue due process.

ECF No. 58 at 91. Attached to the email was an objection to the Court's order and a motion for the undersigned to recuse. *Id.* at 93–99.

That same afternoon and evening, Plaintiff sent four more emails to the Court's staff and the Clerk of the Court. *Id.* at 100–120. Several of the emails had filings attached to them. A persistent stream of emails and filing attachments were then sent to the Court's staff, the Clerk of the Court, and/or the staff of the former Chief Judge of this District from July 14 until July 24, 2025. *Id.* at 121–286. In total, Plaintiff sent nearly twenty emails to this group of courthouse employees and others after the Court ordered Plaintiff to cease email communications and filings. *Id.* at 91–286.

Between when the Court entered the Additional Restrictions Order on July 11, 2025, and the show cause hearing on July 24, 2025, Plaintiff filed another nine motions. ECF Nos. 41–42, 44, 46, 51–52, 55–56, 59. Many of these motions were what he also sent to the above staff via email. The motions sought to strike orders, to get a default judgment, to reassign the case to another judge, to sanction court staff for alleged misconduct, and other various forms of relief.

The Court held the show cause hearing on July 24, 2025. Right after the hearing the Court entered an interim order (the "Interim Restrictions Order") restricting Plaintiff's courthouse access and contact with chambers staff, court staff, and any member of the Clerk's Office until the Court ordered otherwise. ECF No. 61. It also required him to make all filings through the EDSS. *Id.*

The Court made clear that it would be entering a more detailed order on the subject with factual findings from the hearing. The Interim Restrictions Order was served on Plaintiff via first class mail as well as via email.

Between entry of the Interim Restrictions Order and the more detailed restrictions order (the "Final Restrictions Order"), Plaintiff filed another eight motions. ECF Nos. 63–66, 68, 72–73, 78. The motions mostly sought to reassign the case to another judge, to vacate the Interim Restrictions Order, to disqualify defense counsel, to stay the case, and other various forms of relief. In accordance with the Interim Restrictions Order, Plaintiff filed all these motions via the EDSS and did not email any copies to the Court's staff.

On August 15, 2025, the Court entered the Final Restrictions Order that extended the restrictions from the Interim Restrictions Order through the end of the case and contained detailed factual findings from the show cause hearing. ECF No. 82.[7] One of the terms that a party must agree to before submitting via EDSS is a consent to receive service of court documents and orders via email. *See* EDSS Administrative Procedures, available at https://www.mow.uscourts.gov/sites/mow/files/DC-EDSSAdminProcedures.pdf. So Plaintiff received service of the Final Restrictions Order automatically through an ECF generated email. But out of an abundance of caution, the Court also emailed Plaintiff a copy of the Final Restrictions Order. Plaintiff acknowledged his receipt of it when he filed a motion to vacate it the same day it was entered and served. *See* ECF No. 83.

The same day the Court entered the Final Restrictions Order, it also entered the show cause order at issue here (the "Dismissal Show Cause Order"). ECF No. 84. The Dismissal Show Cause Order directed Plaintiff to explain why the case should not be dismissed under Federal Rule of

---

[7] The Court will not repeat those lengthy findings here, but to the extent they are relevant to the analysis below, the Court will cite the Final Restrictions Order.

Civil Procedure 41(b) for Plaintiff's repeated violations of the Court's orders, including: (1) violating the ISO (ECF No. 13) by calling chambers on July 10, 2025; (2) violating the ISO Violation Order (ECF No. 30) and the Additional Restrictions Order (ECF No. 40) by first emailing filings to the Court's staff and then emailing filings and other statements to the Court's staff, the Clerk of the Court, and other courthouse staff; and (3) violating the Additional Restrictions Order (ECF No. 40) by repeatedly calling the Clerk's Office. *Id.* at 2–4. The Dismissal Show Cause Order listed with specificity and record cites the exact conduct that allegedly violated the specific provisions of these orders. *Id.* It also directed Plaintiff to file an initial brief and Defendant to file a response brief. *Id.* at 4. It then gave Plaintiff the option to file a reply brief. *Id.*

Like the Final Restrictions Order, the Dismissal Show Cause Order was served on Plaintiff via an ECF automatic email as well as an email from the Court's staff. Plaintiff acknowledged his receipt of the Dismissal Show Cause Order when he filed a motion to vacate it the same day it was entered and served. ECF No. 85.

After filing a few more responses about these orders and another motion requesting various forms of relief, ECF Nos. 86, 89–91, Plaintiff filed a petition for a writ of mandamus with the Eighth Circuit. *See In re: Leory Simpson-Brown*, No. 25-2864 (8th Cir. Sept. 18, 2025). In that filing, Plaintiff sought to, among other things, reverse the Dismissal Show Cause Order and force the recusal of the undersigned. *Id.* The Eighth Circuit denied the petition and several requests for review of the denial. While that case was pending, Plaintiff sought to stay this case. ECF No. 98.

On December 9, 2025, after the Eighth Circuit had denied all relief in Plaintiff's appeal, the Court granted Plaintiff's request for a transcript from the show cause hearing held on July 24, 2025. ECF No. 101. It also allowed Plaintiff "to file a final reply to the Court's show cause order

12

(ECF No. 84)" by December 23, 2025. *Id.* Plaintiff then filed three more motions that were a hybrid between seeking reversal of the Court's Final Restrictions Order, a response to the Court's Dismissal Show Cause Order, requests for the undersigned to recuse from the case, and other various forms of relief. ECF Nos. 102–04.

<u>Discussion</u>

Plaintiff's forty-four motions raise a host of issues the Court must briefly address before turning to the Dismissal Show Cause Order. As noted above, Plaintiff makes many of the same arguments across many different motions. Rather than addressing each motion individually, the Court addresses the general arguments Plaintiff makes across several of the motions. Although the Court does not cite every motion in every section below, it has carefully reviewed all of Plaintiff's motions.

## I. The Court has subject-matter jurisdiction.

Plaintiff argues that this case must be remanded to state court because the removal papers did not provide a basis for removal, there is no substantial federal question, Defendant did not answer in state court before removing the case, Defendant did not provide the necessary notice to the state court, and the notice of removal contained the wrong federal case number. *See* ECF Nos. 6–7, 10, 20, 24, 26–27. Defendant argues that each of these arguments lacks merit.

Defendant is correct on all fronts. First, the notice of removal as well as Plaintiff's pleadings provide two sound bases for removal: (1) diversity jurisdiction because the parties are citizens of different states and Plaintiff seeks $810,000, well over the $75,000 requirements; and (2) a substantial federal question exists because Plaintiff is seeking to hold Defendant liable for a FCRA violation. *See* 28 U.S.C. §§ 1331, 1332; ECF Nos. 1, 1-2 (laying out the bases for the Court's jurisdiction). Second, Defendant was not required to answer in state court before removing

13

here; it simply had to file its notice of removal here within the thirty days provided under the statute. *See* 28 U.S.C. § 1446(b)(1). Defendant accepted informal service on May 30, 2025, and it timely filed its notice of removal in this Court on June 30, 2025, the thirtieth day under the removal statute and the Federal Rules of Civil Procedure. *See id.* (thirty-day deadline); Fed. R. Civ. P. 6(a)(1)(C) (the last day for filing is excluded where, as here, it falls on a Sunday); *see* ECF No. 1 at 2 (noting when the complaint was informally served).

Third, as evidenced by the notice of removal here as well as the current State Court Case docket, Defendant "promptly" provided notice to the state court by also filing a notice there on June 30, 2025. *See Simpson-Brown v. Bank of Am.*, 2516-CV13029 (Mo. Cir. Ct. June 30, 2025) (Defendant's notice of filing of notice of removal to federal court that was file-stamped by the state court as filed on June 30, 2025). This contemporaneous filing of the notice satisfied the requirements under 28 U.S.C. § 1446(d).

The clerical error that resulted in the *case caption* bearing the wrong case number does not change that result. The removal notice in this case and the copy of the same filed in the State Court Case contain the correct case number file-stamped on each page. *See id.*; *see* ECF No. 1. This provided sufficient notice to both the state court and Plaintiff that the case had been removed. Indeed, the state court later entered an order confirming that the case had been removed on June 30, 2025, and it had no jurisdiction to decide any of Plaintiff's pending motions. And Plaintiff had immediate actual notice of the removal as well as the correct case number as evidenced by the motion he filed here the day after removal. That motion bore the correct case number in its caption. ECF No. 10 at 1. To remand based on this minor clerical or scrivener's error in the case caption when all the key substantive and procedural requirements for removal have been so clearly met would improperly elevate form over substance. *See Griffioen v. Cedar Rapids & Iowa City Ry.*

14

*Co.*, 785 F.3d 1182, 1187 (8th Cir. 2015) (declining to adopt a rule "that places form over substance" in interpreting 28 U.S.C. § 1446).

So the Court will not do so. *See Terry v. Beaufort Cnty. Sch. Dist.*, No. 9:20-CV-02351-MBS/MGB, 2020 WL 7000914, at *2 (D.S.C. Sept. 8, 2020) (declining to remand when the notice of removal contained the wrong case number but complied with all statutory requirements); *see also Johnson v. Boone Cnty., Mo.*, No. 2:25-CV-4210-MDH, 2026 WL 93830, at *3 (W.D. Mo. Jan. 13, 2026) (declining to remand case when the defendants did not include the entire state court record with the notice of removal); *Perez v. Ibrahim*, No. 23-CV-7378-JGK, 2024 WL 4372359, at *2 (S.D.N.Y. Oct. 2, 2024) (declining to remand when the defendants failed to provide the exact same copy of the notice of removal to the state court); *City of Jefferson, Mo. v. AT&T Corp.*, No. 4:22-CV-313-SRW, 2022 WL 4378815, at *3 (E.D. Mo. Sept. 22, 2022) (declining to remand case when a notice of removal was not properly titled as such); *Four Seasons Marina Rentals, Inc. v. City of Osage Beach, Mo.*, No. 08-4221-CV-CNKL, 2008 WL 5427870, at *3 (W.D. Mo. Dec. 30, 2008) (declining to remand case when the notice of removal contained the wrong division).

Since the Court has subject-matter jurisdiction and Plaintiff provides no other legally and factually supported basis for remand, his motions to remand are DENIED.

## II. The undersigned will not recuse.

The most common argument across all of Plaintiff's motions is that the undersigned should recuse from hearing this case because the undersigned's impartiality might reasonably be questioned, the undersigned is biased against him, and the undersigned has personal knowledge of a disputed fact. Plaintiff argues that this is demonstrated by, among other things, the undersigned's: (1) ruling on Defendant's motion for extension of time without ruling on his motions; (2) rulings and statements made before, at, and after the show cause hearing and in all

accompanying orders; (3) alleged ex parte communications with Defendant's counsel; (4) ruling that Defendant's counsel could be at—and participate in—the hearing; (5) personal knowledge of disputed facts in the case; (6) clerk's manipulation of order; and (7) one-sided enforcement of orders against Plaintiff. *See* ECF Nos. 33, 41, 63–66, 68, 85, 90–91, 100, 102–104.

Plaintiff seeks recusal under 28 U.S.C. §§ 455(a), 455(b)(1). Under § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The inquiry under § 455(a) uses an "objective standard" that asks "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013) (internal quotation marks omitted). In seeking recusal under § 455(a), a movant shoulders "a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *Johnson v. Steele*, 999 F.3d 584, 587 (8th 2021) (internal quotation marks omitted).

Under 28 U.S.C. § 455(b)(1), a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." A judge is not required to recuse under the personal knowledge provision of this section when the alleged facts are "learned by a judge in his judicial capacity." *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1329 (8th Cir. 1985); *see also Melton*, 738 F.3d at 906 ("Even if a dispute had existed, the judge observed the altercation in the course of the judge's normal courtroom duties."); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 447–48 (2d Cir. 2005) ("Knowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1).").

The bases for recusal here under both the partiality and bias sections largely revolve around

16

the undersigned's rulings and statements in orders and at the show cause hearing. "In order to establish bias or prejudice from in court conduct, a party must show the judge had a disposition so extreme as to display a clear inability to render a fair judgment." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1021 (8th Cir. 2010) (citation modified). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (citation modified). That standard is typically not met by judicial remarks that "are critical or disapproving, or even hostile to, counsel, the parties, or their cases." *Liteky v. United States*, 510 U.S. 540, 555 (1994). For example, it is not enough if a judge shows "expressions of impatience, dissatisfaction, annoyance, and even anger." *Id.* at 555–56. In fact, a "judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from recusal attacks. *Id.* at 556. And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555.

Nothing cited across Plaintiff's many motions for recusal comes close to meeting these standards. Many of the allegations are counterfactual, and thus, meritless. First, the undersigned and his staff never had any ex parte communications with Defendant or its counsel. The only ex parte communication that occurred was when *Plaintiff* called chambers in violation of the ISO, and the Court immediately documented that communication in the record. Second, the Court has not engaged in one-sided enforcement of orders against Plaintiff, while ignoring Defendant's transgressions. Defendant has not violated any court orders, only Plaintiff has done so. Third, no court staff has "manipulated" court records or entered orders without the undersigned's permission. Since none of these things occurred, they cannot supply a basis for recusal.

17

The undersigned's statements at the hearing and in the accompanying orders do not show bias or prejudice. As outlined in the Court's lengthy Final Restrictions Order, from the start of this case through the show cause hearing, Plaintiff has repeatedly caused significant disruptions in the courthouse, violated court orders, and shown disrespect to the Court and the employees who work at the courthouse. *See* ECF No. 82. The rulings and statements regarding Plaintiff's conduct were necessary to keep order and decorum in the courtroom, the courthouse more generally, and these proceedings. *See Liteky*, 510 U.S. at 555–56. Moreover, to the extent Plaintiff has complaints about the undersigned's statements and rulings at the show cause hearing or in orders, he has every right to appeal those issues. *See United States v. Ali*, 799 F.3d 1008, 1018 (8th Cir. 2015) ("[T]his discussion merely shows the nature of the disagreement between the court and Ali. The proper recourse in this situation is an appeal, which Ali took to this court, not a bias or partiality motion to the district court."). But such statements, warnings, and adverse rulings are not enough to warrant recusal. *See id.*; *Melton*, 738 F.3d at 906; *United States v. Martin*, 757 F.3d 776, 778 (8th Cir. 2014) ("The court here gave a warning and recognized it was subject to change. A court may caution a defendant about consequences of future violations.").[8]

Nor does the undersigned's ruling on Defendant's motion for an extension of time without addressing Plaintiff's motions show any favoritism. The undersigned did not want Defendant to expend unnecessary time and resources over the holiday weekend drafting an answer or motion to dismiss waiting for the Court to rule on its routine motion for an extension of time. Nor was it necessary to wait for Plaintiff's response because there was no legal or factual basis to deny the extension request. This is the Court's common practice on minor extension requests. In fact, later

---

[8] Plaintiff makes much of the Court's warnings at the show cause hearing. But the Court is required by the caselaw to give warnings of potential discipline, sanctions, or charges before imposing them when Plaintiff has engaged in— or is coming close to engaging in—sanctionable or contemptuous behavior.

18

in the case, when Plaintiff sought to move the show cause hearing, the Court granted his motion without waiting for Defendant's response. So the Court did not demonstrate any favoritism or bias by ruling on a routine extension request without addressing Plaintiff's substantive motions, which were not even fully briefed at the time.

The same is true for allowing Defendant's counsel to participate at the show cause hearing. As a litigant in the case, Defendant's counsel was well within her rights to attend the public show cause hearing on behalf of her client. And although the Court allowed her to ask questions of witnesses as a courtesy, she declined to do so. Plaintiff was offered the same opportunity, and he asked many questions. So this does not show any favoritism.

Finally, the Court does not have any knowledge of disputed evidentiary facts in this case. Everything the Court has learned about this case has come from adjudicating these proceedings. It has not sought—or received—any extrajudicial information about the merits of this case or any issue involved in it. To be sure, the undersigned received reports from courthouse staff as well as chambers staff about Plaintiff's actions in the courthouse and his communications with them. But those were all within these proceedings. *See Hale*, 756 F.2d at 1329; *see also Melton*, 738 F.3d at 906. And the actions and statements were necessary for the Court to carry out its judicial function of maintaining order and decorum in these proceedings and the courthouse. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966). And if the undersigned allowed recusal on this basis, it would create a perverse incentive for a litigant to engage in order violations and misconduct to get a new judge. *See Akins v. Knight*, 863 F.3d 1084, 1087 (8th Cir. 2017).

Since none of Plaintiff's allegations or complaints require recusal, Plaintiff's motions on this subject are all DENIED.

### III. Plaintiff's motion to disqualify counsel is denied.

Plaintiff argues that Defendant's counsel must be disqualified from the case because she attended the show cause hearing. ECF No. 72. Plaintiff argues that this makes her a material witness because her attendance suggests she coordinated with witnesses and had ex parte communications with the Court. Defendant argues that counsel is not a material witness.

Defendant is correct. There were no ex parte communications between the Court and Defendant or its counsel. Moreover, Defendant's counsel had no role in the issuance of the show cause orders or the calling of witnesses. And to the extent Defendant's counsel participated in the hearing, it was solely as Defendant's representative at the hearing. She did not testify, and she did not ask any questions. Since Defendant's counsel had no role in the show cause order, the calling of witnesses at the hearing, or any discussions with the Court about the same, she is not a necessary witness to any relevant issue in this case. *See Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("Rule 4–3.7 of the Missouri Supreme Court Rules of Conduct has been interpreted to mean an attorney is a necessary witness only if there are things to which he will be the only one available to testify." (internal quotation marks omitted)). Thus, Plaintiff's motion to disqualify Defendant's counsel on this basis is DENIED.

### IV. Plaintiff's motion for default judgment is denied.

The day after this case was removed, Plaintiff moved for an entry of default and default judgment against Defendant because it had not responded to Plaintiff's complaint in the State Court Case before removal. *See* ECF Nos. 4, 41–42. Defendant argues that this motion must be denied because Plaintiff did not follow the two-step process required to get a default judgment and because Defendant was never in default.

Defendant is correct on both fronts. Both under the Federal Rules of Civil Procedure and

20

Case 4:25-cv-00501-DGK   Document 105   Filed 03/05/26   Page 20 of 35

the Local Rules, Plaintiff was required to first seek an entry of default that strictly complies with the affidavit and notice requirements. *See* Fed. R. Civ. P. 55(a); L.R. 55.1(a). Plaintiff's motion fell well short of complying with entry of default requirements. So the motion could be denied on that basis alone. But even if the Court overlooked these procedural deficiencies, Plaintiff still would not be entitled to an entry of default or default judgment because Defendant's time to answer or otherwise respond to the complaint had not passed when Plaintiff filed its motion for an entry of default and default judgment. Defendant had until July 7, 2025, to file an answer once the case was removed on June 30, 2025. *See* Fed. R. Civ. P. 81(c)(2). The Court then extended that deadline to July 17, 2025, ECF No. 16, and Defendant timely filed a motion to dismiss the entire case by that date, ECF Nos. 48–49. So Defendant has not failed to plead or otherwise defend this case. Thus, Plaintiff's motion for an entry of default and default judgment is DENIED.

### V. Plaintiff's remaining requests in his motions are denied.

Aside from what is addressed above and below, Plaintiff makes many different requests across various motions. Among other things, Plaintiff requests that the Court: (1) expedite ruling on motions; (2) strike Defendant's corporate disclosures; (3) strike, vacate, or reconsider the Court's various orders in the case; (4) allow discovery into alleged misconduct by courthouse staff and the Court's employees; (5) sanction or discipline the Court's staff or courthouse employees for altering the docket; (6) strike mislabeled docket entries; (7) supplement the record with complaints he has made to investigatory agencies; (8) enter final judgment because of fraud on the Court; (9) stay the case so the parties can engage in settlements; (10) stay the case because of the Eighth Circuit's pending appeal; (11) enforce his rights to a fair forum; and (12) refer the Court's and its staff's misconduct to the proper authorities. ECF Nos. 5, 8, 18–19, 21, 24, 26–27, 32–33, 35–37, 39, 41, 44, 46, 51, 52, 55–56, 59, 63, 66, 68, 73, 78, 83, 85, 90, 98, 100, 102–104.

After carefully reviewing all these arguments, requests, and motions on these subjects and the other issues addressed, they are all DENIED. For most of these requests, arguments, or motions, Plaintiff provides no factual or legal basis for the relief he requests. For example, many of the arguments are based on events that did not occur (e.g., alleged manipulation of the records by the court staff, improperly entered orders, etc.) or Plaintiff's mischaracterizations of the Court's actions, rulings, and findings. For the ones that have some basis in fact, Plaintiff does not provide any convincing legal authority that requires the Court to grant his requested relief. For some of the other requests, arguments, or motions, they have been mooted by the court's rulings in this order, the Court's other rulings, or by events that already occurred (e.g., his appeal has ended).

## VI.   The case is dismissed under Federal Rule of Civil Procedure 41(b) for repeated violations of the Court's orders.

That leaves the issue of whether this case should be dismissed under Rule 41(b) for Plaintiff's repeated violations of the Court's orders. Plaintiff alternatively argues that the orders were unlawful, he did not violate them, there is no admissible evidence that he violated the orders, he did not understand the scope of the orders, he was justified in violating them because he was just engaging in lawful objections and protected First Amendment activity, he was not threatening or violent in his actions, and lesser sanctions are more appropriate. Defendant counters that Plaintiff knowingly violated multiple orders, and dismissal with prejudice is necessary.

Under Rule 41(b), the Court can dismiss the case if Plaintiff "fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." *See Haley v. Kansas City Star*, 761 F.2d 489, 490 (8th Cir. 1985) ("A district court may, on its own motion, dismiss an action for failure of the plaintiff to comply with any order of the court."); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) (holding that Rule 41(b) dismissal for failure to prosecute can be done on a court's own initiative). A single violation of a court order is enough to warrant dismissal.

*See Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994). And it is well-settled that "[p]ro se litigants are not excused from complying with court orders or a substantive and procedural law." *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988). Indeed, a pro se plaintiff—like any other litigant—may have his case dismissed under Rule 41(b) when he willfully violates court orders. *See Aziz*, 34 F.3d at 589 (affirming Rule 41(b) dismissal where pro se plaintiff "willfully disregarded" a court order).

To determine whether dismissal is appropriate, the Court "employs a balancing test that focuses foremost upon the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the administration of justice in the district court." *Rodgers v. Curators of Univ. of Mo.*, 135 F.3d 1216, 1219 (8th Cir. 1998) (internal quotations omitted). The Eighth Circuit has warned that the "sanction imposed by the district court must be *proportionate* to [Plaintiff's] transgression[s], and that dismissal with prejudice is an extreme sanction and should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint." *Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008) (citation modified and emphasis in original). But in deciding whether to dismiss with prejudice, the Court need not find that Plaintiff "acted in bad faith, only that he acted intentionally as opposed to accidentally or involuntarily." *Rodgers*, 135 F.3d at 1219.

In deciding whether to dismiss with prejudice under Rule 41(b), the Court "should first consider whether any less-severe sanction could adequately remedy the effect of the delay on the [C]ourt and the prejudice to the opposing party." *Smith*, 526 F.3d at 406. While it is not required, the Court should typically warn Plaintiffs that they are "skating on the thin ice of dismissal" before doing so. *Rodgers*, 135 F.3d at 1221. The Eighth Circuit has emphasized that "[a]lthough

23

dismissal with prejudice is an extreme sanction," it gives the Court "a large amount of discretion in regulating and sanctioning misconduct that occurs in proceedings before it." *Good Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794, 797 (8th Cir. 2003).

With these standards in mind, the Court first addresses whether Plaintiff willfully violated the Court's orders before turning to the remaining factors.

### A. Plaintiff willfully and repeatedly violated the Court's orders.

On July 2, 2025, the Court entered the ISO. ECF No. 13. As noted above, among other things, the ISO prohibits ex parte communications and any phone calls to chambers, absent an emergency or if the call or communication is authorized by law. ECF No. 13 at 2. Plaintiff violated this order on July 10, 2025, when he called chambers to try to reschedule the show cause hearing that was initially set for July 16, 2025. As the Court documented after the call, Plaintiff's call was not emergency because he was seeking to move a hearing that was six days away and had ample time to file a motion for an extension of time. *See* ECF No. 30 at 1.

The Court also finds that this violation was willful. Several days after the Court had entered the ISO but before Plaintiff's call to chambers on July 10, 2025, Plaintiff twice referenced the ISO and its requirements in his motions. *See* ECF Nos. 21 at 2, 26 at 1. In the motion filed on July 9, 2025, the day before he called chambers, he specifically mentioned that the ISO "outlines mandatory expectations for all parties" and proceeded to list several of those requirements. ECF No. 26 at 1. Plaintiff thus clearly knew of the ISO and what it required.

What further proves the willfulness of the violation is what occurred in the courthouse and via email in the days preceding the call. As outlined in detail in the Court's lengthy Final Restrictions Order, both on July 9, 2025, and on another date, Plaintiff caused significant disturbances in the courthouse that required courthouse security and the marshals to intervene to

deescalate the situation. *See* ECF No. 82. The dispute appeared to be over Plaintiff's concern about how the Clerk's Office was handling his filings, and Plaintiff requested to talk to the Court's staff. *See id.* at 8–15. Several times before the call, Plaintiff had also been sending emails and filings to the Court's staff requesting the Court's immediate attention to his case. *See* ECF No. 58 at 1–17. Plaintiff's conduct in these episodes showed a disregard for authority and a desire to get the Court's immediate attention on his case. He followed through on this desire when he called the Court's chambers, despite the prohibition against doing so.

To avoid this conclusion, Plaintiff contends that the ISO was entered and enforced in a retaliatory manner against him. Not so. The ISO is a standard order that the Court has entered at the start of all civil cases since January 1, 2024. *See* Initial Standing Order Case Procedures, available at https://www.mow.uscourts.gov/judges/kays. And here, the Court entered the ISO well before Plaintiff had created the disturbances in the courthouse. *See* ECF No. 13 (filed on July 2, 2025). Likewise, the Court has enforced the ISO against Plaintiff because he is the only person who has directly and fragrantly violated its prohibitions.

At times, Plaintiff also claims there is no "evidence" that the calls occurred. This is also counterfactual. The Court documented the calls in the ISO Violation Order right after they occurred. ECF No. 30. And for his part, Plaintiff also acknowledges multiple times in his filings and emails that he did, indeed, call chambers. *See* ECF No. 58[9] at 38 (noting that one of the Court's staff refused to identify himself before ending the phone call), 42 (same), 47 (same), 75 (same); ECF No. 85 at 31 (Plaintiff's account of what happened on the call). Thus, the Court finds that Plaintiff willfully violated the ISO by calling chambers on July 10, 2025.

---

[9] Throughout his filings, Plaintiff also objects to the Court using the emails he sent to the Court's staff and the courthouse staff. This objection is frivolous. The emails were sent from the same account that Plaintiff used to file through EDSS, and most of his emails contained his name at the bottom.

And while the willful violation of a single order is enough to support dismissal under Rule 41(b), *see Aziz*, 34 F.3d at 589, Plaintiff continued to repeatedly violate court orders after this instance, *see Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527–28 (8th Cir. 2000). In the ISO Violation Order, the Court specifically stated that "[f]ilings cannot be made via email" and that "[a]ll electronic filings must be made through the EDSS." ECF No. 30 at 1 n.1. Along with being served via mail, the Court also had its staff email a copy of this order to Plaintiff when it was entered. *See* ECF No. 58 at 39–41.

Plaintiff directly responded to the Court's staff's email several times, *id.* at 38–41, and the second time Plaintiff responded to that email he attached a motion objecting to the ISO, *id.* at 40–45. Around an hour later, Plaintiff sent another email to the Court's staff as well as the Clerk of the Court with more filings attached. *See id.* at 46–66. The next morning, Plaintiff again emailed the Court's staff and the Clerk of the Court with more motions that he insisted should be made "part of the court record" and "be filed accordingly." *Id.* at 67; *id.* at 67–86. This email was also in response to an earlier email the day before from the Court's staff saying that filings could not be accepted via email. *Id.* at 67–68. A few hours later, Plaintiff again emailed the Court's staff and the Clerk of the Court with a motion for a temporary restraining order and directed the Clerk of the Court to "[p]lease process and docket accordingly." *Id.* at 87–90. These emails and filings are four separate violations of the ISO Violation Order (ECF No. 30).

And like the violation of the ISO, the Court finds that these violations were also willful. Plaintiff had clearly received the ISO Violation Order, as he responded to the email directly with motions and filings. He had also been told before that order had been entered that he could not make filings via email. *See id.* at 68. It also came after the Court's ISO, which placed strict limits on emails and required all "other communications" to be made "as a filing or motion submitted

26

via ECF or the Clerk's Office." ECF No. 13 at 2–3. The latter of these requirements Plaintiff even previously acknowledged in a motion. ECF No. 26 at 2. Despite all the warnings and prohibitions that Plaintiff should not be emailing the Court's staff with filings, Plaintiff continued to do so.

But Plaintiff persisted with more order violations a few hours later. Due to Plaintiff's persistent stream of emails and filings, the Court had to enter the Additional Restrictions Order. ECF No. 40. That order prohibited Plaintiff "calling and/or emailing chambers staff, court staff, or any member of the clerk's office." *Id.* at 2. It further required "[a]ll communications with the Court must be made in writing and filed in strict compliance with the procedures described in the Court's last order (ECF No. 30)." *Id.* When the Court's staff sent a copy of this order to Plaintiff, ECF No. 58 at 92, he responded to the Court's staff and included the Clerk of the Court, *id.* at 91– 92. In the email, Plaintiff acknowledged the Additional Restrictions Order, the access and email restrictions in it, threatened legal action against the Court's staff, stated he wanted his attached motion to be "entered timely and in full," and concluded that he would "not stand down." *Id.* at 91–92. The "objection" he wanted filed as well as a motion for the undersigned to recuse were attached to the email. *Id.* at 93–99.

But Plaintiff was not done. Five minutes later, he sent another email that acknowledged the Additional Restrictions Order by its docket number (ECF No. 40) and stated that he would "not be silenced, intimidated, or procedurally trapped while raising legitimate objections and preserving [his] constitutional right to due process." *Id.* at 100. He concluded the email by noting that, "[t]he question now is not whether I will act—but whether this Court will stop trying to bend rules in an attempt to break my resolve." *Id.* He continued sending a steady stream of emails to the Court's staff, the Clerk of the Court, and the former Chief Judge's staff over the course of several weeks. *Id.* at 91–286. The only conclusion that can be drawn from these actions is that

Plaintiff knowingly violated the Additional Restrictions Order.

Plaintiff tries to avoid this conclusion by claiming the orders were not clear, and he was simply voicing his objections. These arguments are without merit. Plaintiff knew the requirements of the orders, as evidenced by his immediate email response challenging those limitations. And although Plaintiff has a right to object to the Court's orders, he does not have a right to violate them. The Court gave Plaintiff ample alternative ways in which to make his filings to ensure they were preserved for the record. But rather than just using those avenues, Plaintiff chose to do what he was clearly forbidden from doing under the Court's order.

Even though these over twenty order violations are more than enough for dismissal, Plaintiff also had several more order violations. The Additional Restrictions Order also prohibited Plaintiff from calling the Clerk's Office. But as documented by Plaintiff's own filings, he repeatedly violated this prohibition by calling the Clerk's Office four times between July 14, 2025, and July 18, 2025. *See* ECF Nos. 55, 55-1. These were also knowing violations because before making the calls Plaintiff acknowledged the Additional Restrictions Order via the emails referenced above. And one of times he called the Clerk's Office, the employee also reminded him about the Court's order prohibiting calls and ended the call. ECF No. 82 at 9, 11. And even though Plaintiff claims these calls were simply meant to seek clarification, the nature or content of the calls does not change the fact that just making the calls violated the Court's orders.[10]

As an overarching way to avoid these violations, Plaintiff claims that all the orders were unlawful because the Court does not have jurisdiction, the Court issued the orders when there were pending motions to recuse, and the Dismissal Show Cause Order did not provide sufficient notice

---

[10] Many of Plaintiff's filings regarding Rule 41(b) dismissal focus on whether his words and actions were threatening or hostile. But that is not the basis for the alleged violations; the violations all have to do with whether he called or emailed when he was prohibited from doing so.

of the offending conduct.

As for the first two arguments, there was no colorable basis for Plaintiff's jurisdictional and recusal challenges. So it was not erroneous for the Court to enter the orders while those motions were pending. And more fundamentally, as noted in the Court's Final Restrictions Order, the orders were necessary for the Court to restore order and decorum in these proceedings due to Plaintiff's repeated and escalating misconduct in the courthouse, on the phone, and through email. *See* ECF No. 82 at 16–25. Because of this, the Court could not wait to address Plaintiff's misconduct until after addressing his many voluminous motions.

Finally, Plaintiff's claim that the Dismissal Show Cause Order did not provide sufficient notice of the factual and legal basis for dismissal is contradicted by a review of that order. The Dismissal Show Cause Order provides specific record cites to the orders that were allegedly violated and the exact conduct that allegedly violated them. It also gave Plaintiff notice that the legal basis for dismissal is Rule 41(b). And Plaintiff's many responses show he had sufficient notice because he argued why the specific conduct did not—in his view—satisfy the Rule 41(b) standard for dismissal. *See* ECF Nos. 85, 96, 100, 102, 103, and 104. Thus, Plaintiff did not lack notice.

Based on the above, Plaintiff violated the ISO (ECF No. 13), the ISO Violation Order (ECF No. 30), and the Additional Restrictions Order (ECF No. 40). In fact, Plaintiff engaged in over twenty knowing violations of these orders. This history of egregious, flagrant, and repeated order violations strongly supports dismissal with prejudice. *See Rodgers*, 135 F.3d at 1219. But the Court must consult the remaining factors to determine whether they also support dismissal.

### B.  Plaintiff's actions have prejudiced Defendant.

As noted above, while the egregiousness of Plaintiff's conduct is the primary focus of the dismissal inquiry, the Court must also consider whether Plaintiff's conduct has also prejudiced Defendant.  *See id.*

The Court finds that Plaintiff's order violations have prejudiced Defendant.  This should have been a straightforward case to litigate, but Plaintiff's order violations have caused an entire separate disciplinary dispute.  Defendant has been inundated with the many emails that Plaintiff sent in violation of the Court's order, Defendant has had to review those communications and attached filings to stay apprised of all case developments, Defendant had to attend a show cause hearing on related courthouse restrictions, and Defendant had to draft a lengthy brief regarding whether dismissal was appropriate under Rule 41(b).

On the latter issue, to properly brief the issue, Defendant had to research the Rule 41(b) caselaw, review all the Court's orders, parse the hundreds of pages of emails and filings that violated these orders, review Plaintiff's briefs and other filings about the Dismissal Show Cause Order and the orders mentioned in it, and then draft the brief to explain why dismissal is appropriate under the law and facts here.  Plaintiff's order violations have led to Defendant and its counsel needlessly expending time and resources litigating issues that do not even involve the merits of the dispute.   Thus, the Court finds that Defendant has been prejudiced by Plaintiff's order violations, so this factor also tilts in favor of dismissal with prejudice.

### C.  Plaintiff's actions have burdened the Court's docket and the administration of justice.

In addition to the egregiousness of Plaintiff's conduct and the prejudice to Defendant, the Court must also consider the burden that Plaintiff's order violations have placed on the Court's docket and the administration of justice.  *See id.*

The amount of wasted time and resources from Plaintiff's order violations is staggering. In the undersigned's entire time as a judge at the state and federal level, the undersigned has never encountered a litigant who has engaged in so many order violations. And these violations have happened before the litigation on the merits has even begun in earnest. The undersigned and the undersigned's staff have lost an extraordinary amount of time dealing with Plaintiff's various order violations. The undersigned had to draft several urgent orders at the outset of this case due to Plaintiff's conduct. When Plaintiff violated those orders and escalated his conduct, the undersigned had to draft additional urgent orders to address his conduct. After those orders were entered, Plaintiff's continued violations caused the undersigned's staff to have to review a torrent of emails and attached filings that were sent to them, collect and organize those communications and filings, and then file them in the record. *See* ECF No. 58. The undersigned has then had to review the many motions and filings challenging all the Court's orders and the responses to the Dismissal Show Cause Order. The undersigned then had to reanalyze all the voluminous record evidence and filings. And as alluded to below, Plaintiff's responses to the Dismissal Show Cause order far exceeded the Court's allowed number of filings on the issues and the length of filings under the Local Rules.

This wasted time has prevented the Court from addressing the few non-frivolous filings in this case that addressed the merits of the dispute (e.g., Defendant's motion to dismiss). But it has also caused the Court to divert significant resources and time from meritorious cases. All of this could have been avoided if Plaintiff had simply followed the Court's clear and unequivocal orders. But Plaintiff chose not to do so. Given the significant burden on the Court's docket and the administration of justice, this factor—like the others—favors dismissal with prejudice.

**D. Plaintiff was warned many times, and no lesser sanction is appropriate.**

Aside from the above core factors, the Eighth Circuit also considers whether a warning was provided, *Rodgers*, 135 F.3d at 1221, and whether any lesser sanctions were considered, *Smith*, 526 F.3d at 406.

On the warning front, Plaintiff received many. The ISO warned that violating the ISO may result in, among other things, "dismissal of claims or cases." ECF No. 13 at 1. After Plaintiff had violated the ISO, the Court warned Plaintiff in the ISO Violation Order that "failure to follow the Court's orders may result in the imposition of civil sanctions under Federal Rule of Civil Procedure 11, Rule 41(b), 28 U.S.C. § 1927, and/or the Court's inherent authority." ECF No. 30 at 2. The Court also stated that the sanctions could include "dismissal of this case with or without prejudice." *Id.* When he violated the prohibitions of that order, the Court entered the Additional Restrictions Order. ECF No. 40. In that order, the Court again provided the same warning from the ISO Violation Order. *Id.* at 2. These warnings along with the Court's show cause order gave Plaintiff ample notice of potential dismissal, a chance to respond, and/or a chance to reform his conduct. *See Fischer v. Cingular Wireless, LLC*, 446 F.3d 663, 666 (7th Cir. 2006). But despite all these very explicit warnings, Plaintiff chose to continue violating the Court's orders.

That leaves the issue of lesser sanctions. As an alternative sanction, Plaintiff proposes that the Court should impose more tailored, clear, and restrictive orders on communications and filings. But the Court has already been incrementally restricting Plaintiff's access to the courthouse and his ability to directly contact the Court's staff and courthouse staff to no avail. Those orders could not have been clearer and more narrowly tailored, yet Plaintiff immediately, repeatedly, and knowingly violated them. And even more recently, at the show cause hearing, Plaintiff repeatedly ignored the Court's rulings and showed disrespect to the Court and witnesses. *See* ECF No. 82 at

15. And in briefing the Dismissal Show Cause Order, Plaintiff ignored the Court's directives to file "a" reply brief after the Court provided Plaintiff with a transcript. ECF No. 101. Instead, Plaintiff filed multiple briefs. ECF No. 102–04. And several of his briefs have far exceeded the page limitations under the Local Rules. ECF Nos. 85, 103. This demonstrates that tightening Plaintiff's restrictions will not stop him from violating the Court's orders, the Federal Rules of Civil Procedure, and the Local Rules. Moreover, further prospective restrictions would not adequately remedy or punish Plaintiff's past misconduct that has already led to a significant waste of the Court's and Defendant's time and resources. In other words, it would be no sanction at all.

The Court also finds that imposition of monetary fines will not be sufficient. As an initial matter, it appears that Plaintiff is unable to pay any such fines. He previously sought—and the Court provided—a free transcript from the show cause hearing because Plaintiff demonstrated that he was indigent. But even if Plaintiff could pay a nominal monetary sanction, the Court finds that it would not deter him given all the conduct above.

Likewise, dismissal of the case without prejudice would not be enough. This would effectively be no sanction at all. Throughout this litigation, Plaintiff has sought to have this case remanded to state court. By granting dismissal without prejudice, the sanction would have the perverse effect of potentially allowing Plaintiff to refile this case in state court as a reward for his extreme misconduct. And even if Plaintiff refiled the case and it found its way back to the undersigned, Plaintiff could continue his egregious behavior anew.

Plaintiff also proposes that the Court should send the case to another judge or put Plaintiff through a training session about how to litigate cases. These would not be sanctions; they would be rewards for Plaintiff's misconduct. Plaintiff has sought the undersigned's recusal throughout this case, so doing that as a "sanction" for misconduct would make no sense. Similarly, the Court's

33

staff and other courthouse employees do not provide legal advice to parties and cannot advise Plaintiff on how to litigate cases. And even if they could, requiring Plaintiff to have that training would not be a sanction for his misconduct.

The Court finds that dismissal with prejudice is the only appropriate sanction. The Court does not reach this conclusion lightly. But Plaintiff has repeatedly, knowingly, and flagrantly violated the Court's orders. This has drained the Court's and Defendant's time and resources. And based on Plaintiff's disrespectful, aggressive, and defiant conduct and statements throughout this case, the Court finds that if it does not dismiss this case, Plaintiff will continue with his tactics for the remainder of this case. That would only lead to more wasted time and resources. Consequently, this case is DISMISSED WITH PREJUDICE.

### VII.   Defendant's motion to dismiss is denied as moot.

Since this case is being dismissed under Rule 41(b), Defendant's motion to dismiss (ECF No. 48) is DENIED AS MOOT.

### VIII.   The access and communication restrictions remain in place until further order of the Court.

Given the serious nature of Plaintiff's misconduct as outlined in the Final Restrictions Order (ECF No. 82) as well as Plaintiff's continued order violations in the briefing of the Dismissal Show Cause Order issues, the Court finds that it must continue the access and communication restrictions until further order of the Court. These narrowly-tailored restrictions were—and continue to be—necessary for all the reasons stated in the Final Restrictions Order. *See* ECF No. 82. For these reasons, it is ORDERED that:

1. Plaintiff shall not enter the Charles Evans Whittaker United States Courthouse located at 400 East Ninth Street, Kansas City, Missouri 64106, unless he has a court hearing in one of his cases;
2. If Plaintiff enters the courthouse for a hearing in one of his cases, he must immediately report to a Court Security Officer in the lobby and request an escort to and from the

courtroom and shall not enter the Clerk's Office under any circumstance;

3. Plaintiff is prohibited from calling or emailing the Court's staff, the Clerk of the Court, or the Clerk of the Court's staff—including any member of the Clerk's Office—about this case; and

4. All communications with the Court about this case must be made in writing and filed via the mail or through the EDSS. No filings shall be made via email.

Failure to follow this order may result in the imposition of criminal penalties for criminal contempt of court under 18 U.S.C. § 401 and/or the Court's inherent authority.

## Conclusion

For the reasons discussed above, all motions are DENIED, and this case is DISMISSED WITH PREJUDICE under Rule 41(b) for failure to comply with the Court's orders. Moreover, as discussed above, the Court is continuing its prior access and communication restrictions from the Final Restrictions Order (ECF No. 82) until further order of the Court.

**IT IS SO ORDERED**.

Date:   March 5, 2026             /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT